**SO ORDERED.**

**SIGNED this 23rd day of March, 2018.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANASAS

| IN RE: | |
|---|---|
| ADAM JOHN MILLIMAN<br>AMY LYNN MILLIMAN | Case No. 17-10393<br>Chapter 13 |
| **Debtors.** | |

## MEMORANDUM OPINION

It's not that hard. All a home loan creditor needs to file a proof of claim is an amount due, a payment record, copies of the relevant writings, an escrow account report current at the date of the petition, and a reliable calculation of the arrearages that may be due.[1] Official Forms 410 and 410A are designed to elicit that information so that the creditor, the debtors, the chapter 13 trustee, and the judge can determine

---

[1] Generally, Fed. R. Bankr. P. 3001.

1

whether the debtors' chapter 13 plan adequately treats the creditor's claim. All four constituencies rely heavily on the proof of claim—that's why creditors are required to execute it under penalty of perjury. Of course, people make mistakes, but when they do, it shouldn't be that hard to correct them. When a creditor (i) files an incorrect claim that overstates the debtor's liability, (ii) ignores the debtors' informal efforts to correct it, (iii) forces the debtor to file a claim objection, and then (iv) ignores the debtor's discovery requests, the debtors, the trustee and the Court are put to unnecessary expense, effort, and frustration. That's exactly what happened here.

Ocwen Loan Servicing L.L.C. owns and services Adam and Amy Milliman's home mortgage loan. When the Millimans filed this chapter 13 case, Ocwen filed a proof of claim and a mortgage proof of claim attachment that overstated the Millimans' escrow shortage by over $4,000 despite what its escrow statement of account stated. After the Millimans' counsel's informal inquiries elicited no response, she filed an objection to the claim and issued written discovery. Ocwen never responded to the discovery requests and, only a few days before the hearing on the claim objection, Ocwen amended its claim to reflect the correct escrow shortage of $369 rather than $4,383. In their objection, the debtors seek sanctions under Fed. R. Bankr. P. 3001(c)(2)(D). After hearing Mr. Milliman's testimony and carefully reviewing the documents provided with the two claim filings, I find that Ocwen's claim as amended should be allowed, but that Ocwen should be assessed as provided

2

in Fed. R. Bankr. P. 3001(c)(2)(D) for the attorneys' fees and expenses incurred by the debtors in bringing its errors to light.[2]

Facts

The Millimans filed this chapter 13 case on March 21, 2017. Ocwen's counsel, Shapiro & Kreisman, acting through Garrett Gasper, Esq., entered an appearance and request for notices in the case on March 27, 2017.[3] Because the debtors were current on their home mortgage when they filed, they proposed to pay their mortgage outside their plan.[4] On July 13, Ocwen employee Aaron Friedlander signed and filed Ocwen's Claim 16-1.[5] The proof of claim set out the Millimans' mortgage debt to Ocwen and the required Mortgage Proof of Claim Attachment ("Attachment") that details what is owed and how it is calculated, stated that the debtors owed a "projected escrow shortage" of $4,383.26.[6] Ocwen claimed that amount as its alleged pre-petition mortgage arrearage. In the body of the proof of claim form, Ocwen asserted that amount as the "amount necessary to cure" the mortgage default on the date of the petition.[7] On July 18, debtors' counsel, January Bailey, e-mailed Mr. Friedlander and Mr. Gasper seeking an explanation.[8] Other than receiving brief responses from a "Ms. Hegde" at Ocwen and Mr. Gasper, each advising that they

---

[2] Attorney January Bailey appears on behalf of the debtors. Attorney Garrett Gasper appears for Ocwen Loan Servicing.
[3] Doc. 18.
[4] Doc. 2.
[5] Ex. 2.
[6] Ex. 2, Debtor p. 8.
[7] Ex. 2, Debtor p. 6.
[8] Ex. 5.

3

would inquire, Ms. Bailey never received any more information. Shapiro & Kreisman filed an Official Form 410S2 notice of postpetition mortgage fees, also signed under penalty of perjury, on August 31, 2017 that requested an additional allowance of $400 for "Bankruptcy/proof of claim fees."[9] The invoice attached in support states that the fee was incurred on March 31 for "ATTORNEY FEE—BK PLAN REVIEW."[10]

On October 18, 2017, chapter 13 Trustee Carl B. Davis filed a notice of allowed claims that proposed to allow Ocwen's arrearage claim for $4,383.26 unless the claim was objected to or otherwise resolved.[11] After months of fruitless inquiries to both Ocwen and its counsel, Ms. Bailey filed this objection to claim on October 19, alleging that the arrearage claim had no basis in fact because the debtors weren't in arrears, and noting that Ocwen had failed to attach to the proof of claim an escrow analysis run as of the date of the petition.[12] Ocwen's response to the objection filed on November 21, 2017 admitted all allegations except that it denied that it sought to double-charge the escrow shortage (as debtors alleged) and, instead, claimed that it had insufficient information about when it had run the escrow analysis or how much the escrow shortage was.[13] Amazingly, Ocwen also denied any knowledge of whether it had responded to Ms. Bailey's inquiries. After a status conference, the debtors

---

[9] Ex. 3, p. 1.
[10] Ex. 3, p. 3.
[11] Doc. 42.
[12] Doc. 43.
[13] Doc. 44. Specifically, Ocwen admitted in its response that debtors were current on their regular monthly mortgage payments and had an escrow balance of $5,520 on the date of the petition.

4

served written discovery on Ocwen in January of 2018.[14] Ocwen answered none of it. The ignored discovery included requests for admission that are now deemed admitted.[15]

Ocwen admits and its claim exhibits support a finding that, on the petition date, the Millimans' escrow account contained $5,520.27. It filed two escrow account reporting documents with its claim. One, the "Annual Escrow Account Disclosure Statement Bankruptcy Account History" ("History") set out the history of the escrow account from June of 2016 through March 2017, the month the case was filed.[16] It indicated that the Millimans' escrow account held $5,520.27 on the petition date.[17] But the mortgage Attachment showed an escrow balance of only $1,506.27.[18] The other report, titled "Escrow Account Disclosure Statement—Bankruptcy," ("EADS") contained a statement that the Millimans' escrow was expected to be short during the 2017-2018 year by $369.26 and contained an escrow projection month by month for that 12-month period.[19] Post-petition, Ocwen paid the Millimans' hazard insurance annual premium of $4,104. Though Ocwen admitted that the analyses it provided hadn't been prepared as of the petition date, that does not appear to be the

---

[14] Ex. 9-10. The written discovery consisted of requests for admission, Ex. 11; requests for production of documents, Ex. 12; and interrogatories, Ex. 13.
[15] *See* Fed. R. Bankr. P. 9014(c), incorporating Bankruptcy Rule 7036 and Fed. R. Civ. P. 36(a)(3), in contested matters.
[16] Ex. 2, Debtor pp. 10-11.
[17] *Id.,* Debtor p. 11.
[18] *Id.,* Debtor p. 8.
[19] *Id.,* Debtor pp. 12-15. The EADS attached to both the original and amended proof of claim is *identical.* Both show an escrow balance of $5,520.27 on the petition date *and a prepetition escrow shortage of $369.26. See* Ex. 2, Debtor p. 12; Ex. 4, Debtor p. 52.

5

case from my review of the History and the EADS. Contrary to these documents, Ocwen did overstate the arrearage, both on its proof of claim and its Attachment, and understated the escrow balance on the Attachment.

Unfortunately, Ocwen waited until February 6, 2018, just 8 days before trial (and *210 days* after it filed its incorrect claim) to amend its proof of claim, modifying the Attachment to reflect the actual prepetition escrow shortage of $369.26.[20] At the claim objection hearing, Mr. Gasper admitted that Ocwen filed an erroneous initial claim, conceded that the escrow shortage was much less than represented, and apologized for his client's error. He could not explain why it took so long to correct the error. This delay in resolving the disputed claim is all the more baffling given that the History and the EADS attached to the original claim were the exact same documents appended to the amended claim; the original EADS clearly showed a pre-petition escrow shortage of $369.26 all along.[21] For whatever reason, that figure never got transferred to the initial claim form or the mortgage Attachment. Counsel even conceded that the assessment of attorneys' fees was in order, but not in the amount the debtor seeks. However, Ocwen opposed the debtors' demand that, as a further sanction, Ocwen forfeit the escrow shortage.

Mr. Milliman testified that the unresolved error in Ocwen's claimed escrow arrearage had caused him and his family concern, if not discomfort, and had cost him attorney's fees and a day's lost wages to testify at the trial. He did not state how much

---

[20] Ex. 4, Debtor p. 46, 48. But Ocwen did not modify the escrow balance on the Attachment, Debtor p. 48.
[21] Ex. 2, Debtor p. 12. *Cf.* Ex. 4, Debtor p. 52.

6

he had lost. An Ocwen representative was in the courtroom, but he was not called to testify. Ocwen instead relied solely on its exhibits and arguments. Counsel offered NO explanation for Ocwen's error, nor did he explain why Ocwen failed to respond meaningfully to either Ms. Bailey's informal inquiries or her formal written discovery. I left the record open to allow Ms. Bailey to supplement her attorney fees request to recognize her time spent in preparing for and conducting the trial. Ms. Bailey claims that her attorney's fees and expenses in this matter amount to $5,875.00, 23.5 hours of work billed at her customary rate of $250.[22] Ocwen questioned the amount of Ms. Bailey's fees at trial, but filed no response to the supplement she filed, despite given an opportunity to do so.

Analysis

Fed. R. Bankr. P. 3001(c) outlines what needs to be included in a proof of claim filed by a secured creditor. The claim form should substantially conform to Official Form 410. The creditor must attach a copy of any writing upon which the claim is based, an itemized statement of interest, fees, or other charges to be assessed against the debtor, and the amount necessary to cure the debtor's default, if any.[23] If the creditor holds a lien on the debtor's principal residence, it must also include a mortgage proof of claim attachment, Official Form 410A, that reports, *inter alia*, the record of payments on the debt and the extent of the debtor's arrearages on the claim.[24] An inaccurate arrearage statement can result in the debtor paying more than

---

[22] Doc. 58.
[23] Fed. R. Bank. P. 3001(c)(1) & (2)(A) & (B).
[24] Fed. R. Bank. P. 3001(c)(2)(C).

7

is necessary to cure, to her own detriment and that of her other creditors. If an escrow account for taxes or insurance has been established, the creditor must also attach an escrow account statement compiled as of the date the case was filed and in a form as prescribed by applicable nonbankruptcy law.[25] As a possible escrow shortage can be part of a debtor's mortgage arrearage, the lack of a proper statement, or an erroneous one, makes administering the case more difficult.

While Ocwen filed the appropriate escrow account statement in this case, the real inaccuracies occurred when both the proof of claim and the Attachment overstated the escrow shortage despite what the EADS reported, and the Attachment understated the debtors' escrow balance from that reported on the EADS. Thus, the claim lacked "an itemized statement of …charges" as required by Rule 3001(c)(2)(A), an accurate statement of the "amount necessary to cure" as required by Rule 3001(c)(2)(B), and accurate information on the Attachment that is required to be filed by Rule 3001(c)(2)(C). That opens the door to sanctions as provided by Rule 3001(c)(2)(D).

Accurately reporting information on a proof of claim is critical in every case because Fed. R. Bankr. P. 3001(f) accords properly prepared claims the presumption of validity. Accurate information is particularly critical in a chapter 13 case because the debtor, the trustee, and the Court need to know not only the amount of and legal basis for the creditor's claim, but how much money the debtor would have to pay to cure any arrearages and keep the escrow account funded enough to permit the

---

[25] *Id.*

8

creditor to pay casualty insurance and property taxes. An accurate claim is also important to assess the feasibility of a debtor's plan and other confirmation requirements. The rules-makers emphasized the importance of that information by including Rule 3001(c)(2)(D) which provides for sanctions against a creditor who fails to provide it. The form-drafters likewise accented how important accurate claims are by noting on the instructions sheet for Official Form 410 that persons filing fraudulent claims risk violating the bankruptcy fraud statutes that carry penalties including lengthy prison terms and hefty fines. Simple as it seems, filing a proof of claim is a seminal act in bankruptcy that must be done right. Every time.

For reasons unexplained, Ocwen didn't do it right. And, when called upon to explain or correct its misstatements, Ocwen and its counsel failed to meaningfully respond to the debtors' concerns, their lawyers' informal inquiries, or even their formal discovery efforts. Even though Ms. Bailey promptly brought the issues to Ocwen's attention, both by emailing Friedlander, who signed the claim, and Mr. Gasper, Ocwen's counsel, in July of 2017, Ocwen yielded no information whatever until it amended the proof of claim on February 6, over 200 days after its initial, incorrect, filing. That conduct is unacceptable and, as Rule 3001 outlines, sanctionable.

Though Mr. Milliman testified convincingly to the angst this erroneous claim caused his family, I heard no evidence concerning resulting direct economic harm (other than attorney's fees and expenses) that he may have suffered as a result. Rule 3001's sanctions provision provides me with two remedies. A court can exclude

9

omitted information as evidence in an adversary proceeding or contested matter or "award other appropriate relief" including attorney's fees and expenses, or do both. One exhibit that Ocwen attempted to introduce was its Exhibit D, a spreadsheet analysis of the Milliman's escrow account from 2013 to the petition date. The debtor moved *in limine* to bar that exhibit's introduction and Ocwen never offered it (Ocwen didn't even call a witness).[26] Ms. Bailey supplemented her initial statement of time and expenses on this claim objection as allowed by the Court to include fees for trial preparation and the trial.[27] Ocwen did not oppose awarding Ms. Bailey fees, but questioned their amount, and further opposed the debtors' demand that the Court disallow Ocwen from claiming the actual escrow arrearage of $369.

The History dated May 5, 2017 reflects pre-petition escrow activity for the period June 2016 to March 2017 and a projected ending balance in escrow of $6,817.45 as of "Mar-2017."[28] The EADS attached to the initial claim with the same date states that Ocwen anticipated an escrow shortage of $369.26.[29] That statement contains a memo to the debtors stating that Ocwen will increase their mortgage payment to recover that amount beginning April 1, 2017.[30] It also shows that the debtors' insurance premium of $4,014 would be paid from escrow in April of 2017.[31] But, on Form 410 and Form 410A, Ocwen asserted both a claim arrearage and an escrow

---

[26] *See* Doc. 56. That motion is now moot.
[27] Doc. 58, filed after trial is the cumulative statement of her fees and expenses.
[28] *See* Ex. 2, Debtor pp. 10-11.
[29] *Id.*, Debtor p. 12.
[30] *Id.*, Debtor p. 14.
[31] *Id.*, Debtor pp. 12-13.

10

shortage of $4,383.26. It just so happens that the sum of the insurance premium and the actual escrow shortage, $4,014.00 + $369.26, is that same amount, suggesting confusion, miscalculation, or incompetence on Ocwen's part, rather than actual skullduggery.

Even so, Ocwen's refusal to address and resolve the issue informally casts it in a bad light here. Had Ocwen timely responded to Ms. Bailey's request in July of 2017, she would not have been put to the effort of filing a claim objection, promulgating written discovery, informally pursuing responses to that discovery, and prosecuting the hearing on the objection. Ocwen stood mute for over 200 days. Ocwen compounded that innocent mistake with its willful refusal to cooperate. That demands a sanction.

The debtors request that I not only assess Ocwen for their attorney's fees, but also that I disallow Ocwen's escrow shortage and attorney's fee portions of its claim in their entirety. Several courts have held that Rule 3001(c)(2)(D) does not authorize disallowing a claim as part of "other appropriate relief." In *In re Reynolds*, the court declined to disallow a credit card issuer's claim because it did not contain supporting documentation.[32] Instead, that court held "[u]nder customary rules of construction 'other appropriate relief' is construed to allow a remedy of the same character as the specifically enumerated example of 'reasonable expenses and attorney's fees caused by the failure.'"[33] The Rules Advisory Committee Note to Rule 3001 ends any doubt on this point by stating—

---

[32] *In re Reynolds*, 470 B.R. 138, 144 (Bankr. D. Colo. 2012).
[33] *Id.,* citing *Dept. of Labor v. Perini North River Associates*, 459 U.S. 297, 327 (1983).

11

> Subparagraph (D) of subdivision (c)(2) sets forth sanctions that the court may impose on a creditor in an individual debtor case that fails to provide information required by subdivision (c). *Failure to provide the required information does not itself constitute a ground for disallowance of a claim. See* § 502(b) of the Code.[34]

The correct escrow shortage is part of Ocwen's claim and cannot therefore be disallowed. Likewise, while I question whether Ocwen's counsel earned all of the $400 fee it has requested in this case, that, too, is part of Ocwen's claim that I cannot disallow as part of a sanction. And, as noted before, without any evidence of direct economic harm to the Millimans, I cannot offer them "other appropriate relief" beyond allowing Ms. Bailey's attorney's fees and expenses.

Ms. Bailey's fees should be allowed in the amount she requested, $5,875.00. My review of the supplement she filed did not uncover any unreasonable expenditure of time or effort on her part. Ocwen did not respond to the supplement at all. Her hourly rate of $250 is reasonable given Ms. Bailey's considerable experience in the bankruptcy courts of this District and my understanding of the Wichita, Kansas legal market. Her Rule 2016(b) disclosure in this case contemplated that her firm would charge by hour for work done beyond the scope of her basic engagement to file a chapter 13 case and plan, and to seek its confirmation. That Ms. Bailey spent 23.5 hours directly attributable to pursuing this objection, particularly given Ocwen's pattern of ignoring informal and formal discovery requests while waiting until the last moment to correct its claim, is hardly surprising. I recognize that these fees

---

[34] *See* Fed. R. Bankr. P. 3001 Advisory Committee Note (2011) (emphasis added).

12

exceed the amounts in controversy, but remind Ocwen that had it paid any attention to this matter at any point between when it filed its claim on July 13, 2017 and the trial date, the Millimans would not have had to incur this expense.

Human error is more than likely the culprit in this case, but Ocwen and any other creditors who read this need to know that courts take filing incorrect proofs of claim seriously. We get more serious (and suspicious) when creditors are unresponsive or evasive about their errors and refuse to fix them. Bankruptcy judges cannot permit an environment to exist in which claims supposedly filed under penalty of perjury can no longer be trusted to be correct without rendering Rule 3001's presumption of validity meaningless. This would cripple the ability of the bankruptcy system to function efficiently. Filing accurate claims is a bedrock requirement and, as I said at the top, it's not that hard.

The debtors met the presumption of validity of Claim 16-1 with regard to the alleged escrow shortage and arrearage. Ocwen conceded that error and the arrearage is disallowed except to the extent of $369.26 as set out in Ocwen's amended Claim 16-2. The amended claim is allowed as filed. Ocwen is sanctioned $5,875.00 representing Ms. Bailey's reasonable attorney fees and expenses incurred in her 210-day effort to get Ocwen to clarify the escrow shortage. That sanction is payable to Ms. Bailey within 14 days of the entry of this order.

###